UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH DOE, by and through his Parents, JOHN DOE and JANE DOE, <br><br>Plaintiffs, <br><br>v. <br><br>NORTHAMPTON PUBLIC SCHOOLS and the COMMONWEALTH OF MASSACHUSETTS, DIVISION OF ADMINISTRATIVE LAW APPEALS, BUREAU OF SPECIAL EDUCATION APPEALS <br><br>Defendants. | CIVIL ACTION <br>NO.: 3:10-cv-30228 |

COMPLAINT FOR JUDICIAL REVIEW OF
FINAL DECISION OF STATE ADMINISTRATIVE AGENCY

Introduction

I.   This is an appeal from a decision rendered by the Commonwealth of Massachusetts, Division of Administrative Law Appeals, Bureau of Special Education Appeals.  By this action, Plaintiffs are seeking an Order reversing the Ruling of the Bureau of Special Education Appeals Hearing Officer and directing Northampton Public Schools to reimburse them for the costs of the interim home-based program they provided to their son from April 2010 through August 2010.

Parties

2. Plaintiff, Joseph Doe (hereinafter "Joseph"), is a nine (9) year old minor child (D.O.B. ████/2001) currently residing with his parents in Northampton, Massachusetts. During all times relevant to the BSEA proceeding and ruling complained of herein, Joseph resided in Northampton, Massachusetts. Joseph's true identity is set forth in a motion filed with this Complaint.

3. Joseph's parents, John Doe and Jane Doe (hereinafter, "Parents"), currently reside in Northampton, Massachusetts. During all times relevant to the BSEA proceeding and decision complained of herein, the Parents resided in Northampton, Massachusetts. The true identities of the Parents are set forth in the aforementioned motion filed with this Complaint.

4. Defendant, Northampton Public Schools, (hereinafter, "Northampton") is the governmental entity responsible for operating and managing the public schools of Northampton, Massachusetts in compliance with state and federal law. Among other duties, Northampton has specific responsibilities for providing a free and appropriate public education (hereinafter, "FAPE") for all students with disabilities residing in Northampton, including Joseph, as detailed below.

5. Defendant, Commonwealth of Massachusetts, Division of Administrative Law Appeals, Bureau of Special Education Appeals (hereinafter, "BSEA") is responsible for holding due process hearings pursuant to the requirements of 20 U.S.C. §1415 *et seq.*

Jurisdiction

6. This is a complaint for judicial review of a final decision of the Commonwealth of Massachusetts, Division of Administrative Law Appeals, Bureau of Special Education Appeals; jurisdiction is conferred upon this Court pursuant to the Individuals With Disabilities Education Act (hereinafter, "IDEA"), 20 U.S.C. §1415(i)(2).

## Venue

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## Facts

8. Joseph is a child with a disability within the meaning of 20 U.S.C. §1401(3) and M.G.L. c. 71B, §1. At present, he is nine (9) years of age (D.O.B. 02/22/2001). Joseph suffers from dystonic quadriplegic cerebral palsy and cortical vision impairment, as well as a variety of other vision issues. By reason of his disability, Joseph requires special education and related services; accordingly, he is entitled to FAPE.

9. Joseph has received specialized medical and educational supports from an early age, including a mix of home schooling, inclusion, and substantially separate instruction. To date, Joseph remains eligible for special education related services.

10. On July 16, 2008, the Parents filed a Hearing Request with the BSEA. The Hearing Request incorporated documents attached thereto, including the Student's Status Reports of February 12, 2008 and March 28, 2008, as well as Northampton's Status Report of April 22, 2008, a revised Individualized Education Program (hereinafter, "IEP") for the period March 21, 2008 to March 20, 2009, communications by and between the Parents and Northampton from June and July 2008, and the Parents' response to the revised IEP.

11. The Requested Remedy in the Parents' Hearing Request included specific implementation of summer services, reimbursement for services provided by the Parents, and multiple revisions to the revised IEP.

12. A BSEA Phone Conference was held on August 22, 2008. Agreements reached during the Phone Conference were ignored by Northampton.

13. A BSEA Pre-Hearing Conference was conducted on September 19, 2008. Agreements reached during the Pre-Hearing Conference and Orders of the BSEA Hearing Officer were either ignored by Northampton or only partially complied with.

14. Joseph's Team met on March 20, 2009.

15. The IEP developed by Northampton for the period March 20, 2009 to March 19, 2010 was received by the Parents on April 22, 2009. The Parents rejected the proposed IEP in full.

16. From March 20, 2009 to November 15, 2010, Northampton did not convene Joseph's Team.

17. The parties did meet on April 17, 2009 in an attempt to resolve outstanding issues. While agreement was reached on several issues, fifteen (15) issues identified by Northampton, in the Parents' Hearing Request, and at the September 2008 Pre-Hearing Conference, remained unresolved. These issues were delineated in the Parents' letter to Northampton and the BSEA Hearing Officer on April 29, 2009.

18. On May 6, 2009, the Parents filed an Amended Hearing Request with the BSEA. The Amended Hearing Request listed thirty-three (33) concerns brought forward by the Parents to Northampton. Responses by Northampton, if any, to these concerns were limited.

19. The Amended Hearing Request further delineated the paucity of academic instruction provided to Joseph, numerous concerns regarding the March 20, 2009 Team meetings and Team process, and an abundance of substantive concerns regarding Joseph's educational program.

20. The Parents requested immediate referrals to and placement at the Cotting School and/or Perkins School for twelve (12) month programming, compensatory services for the denial of FAPE from September 2008 forward, and administrative findings.

21. A BSEA hearing scheduled for May 29, 2009 was converted to a Pre-Hearing Conference. At the Pre-Hearing Conference, the BSEA Hearing Officer wrote a document entitled "Issues for Hearing" which she included in an Order dated June 1, 2009.

22. A Comprehensive Physical and Occupational Therapy Evaluation conducted by Matthew Luginbuhl, PT and Jennifer Stylianos, OTR/L, dated July 17, 2009 was provided to Northampton and the BSEA.

23. Northampton did not convene Joseph's Team to consider the above-referenced evaluation.

24. A Speech-Language Evaluation dated July 20, 2009 by Carla A. Bernier, MA, CCL, SLP was provided to Northampton and the BSEA.

25. Northampton did not convene Joseph's Team to consider the above-referenced evaluation.

26. A nineteen (19) page Report of Neuropsychological Assessment and Assistive Technology Evaluation by Dr. Rafael Castro and Kathy Rielly, M.Ed. Eds., dated July 21, 2009, was provided to Northampton and the BSEA.

27. Northampton did not convene Joseph's Team to consider the above-referenced Assessment.

28. The Neuropsychological Assessment included seven (7) pages of extensive recommendations regarding scheduling, uninterrupted access to assistive technology, a coordinated plan for supporting Joseph's inclusion and active participation in his upcoming third grade classroom, explicit interactions to provide social interaction through assistive technology and augmentative alternative communication, specific qualifications for service providers, two (2) pages (single-spaced) outlining an effective literacy program, and recommendations regarding math.

29. The parties met for a scheduled BSEA Hearing on July 27, 2009. Instead, they agreed to work cooperatively to address the issues concerning the proposed 2009-2010 IEP.

30. The parties also agreed to invite Dr. Castro and Kathy Rielly to visit Leeds Elementary School in Northampton to complete onsite observations of Joseph in his school setting and refine their recommendations from their July 2009 report.

31. Six (6) further agreements reached on July 27, 2009 and as delineated by Northampton in a letter dated August 7, 2009 were later ignored by Northampton.

32. On November 12, 2009, the Parents filed a Motion to Provide Additional Funding for Completion for the Observations and Supplemental report by Dr. Castro and Kathy Rielly based upon Northampton's denial of a request by Dr. Castro. Northampton

requested that Dr. Castro and Kathy Rielly send their "uncompleted report to the District without delay."

33. The Parents provided a Report of Observations dated November 20, 2009 by Margaret Slitzky, Educational Advocate and Consultant, to Northampton.

34. Northampton did not convene Joseph's Team to consider the above-referenced report.

35. On December 7, 2009, the Parents filed an Emergency Motion for Order Overriding Northampton's Refusal to Grant Permission for Observation by Kathy Rielly from the Integrated Center for Child Development (hereinafter, "ICCD") on December 8, 2009.

36. The BSEA did not conduct hearings or issue rulings or decisions on the Parents' November 12, and November 7, 2009 Motions.

37. Ms. Rielly completed her observations on January 5, 2010, at the Parents' expense. ICCD's Report of School Observation, fifty-seven (57) single-spaced pages, was forwarded to Northampton on January 20, 2010.

38. In preparation for a Pre-Hearing Conference scheduled for January 28, 2010, the Parents forwarded a compilation of unresolved and previously identified issues to Northampton and the BSEA.

39. At the January 28, 2010 Pre-Hearing Conference, the Parents presented a proposal to Northampton for an interim home-based program.

40. On February 7, 2010, Dr. Kathleen Salamone, at Northampton's Request, completed a Functional Behavior Assessment (hereinafter, "FBA") requested by the Parents in the fall of 2009.

41. Northampton never convened Joseph's Team to consider the above-referenced assessment.

42. After a second Pre-hearing Conference in early March 2010, Northampton rejected the Parents' proposal for an interim home-based program.

43. On March 19, 2010, the BSEA Hearing Officer scheduled a hearing on the Parents' Proposal for April 6 and 13, 2010.

44. On March 28, 2010, the Parents filed Student's Motion for Interim Placement. As reasons for the Motion, the Student (and Parents) incorporated their July 2005 Hearing Request, May 2009 Hearing Request, July 2009 Neuropsychological and Assistive Technology Evaluation by Dr. Rafael Castro and Kathy Rielly, January 2010 Report of School Observation by Dr. Castro and Ms. Rielly, all previously on record with the BSEA, as well as the November 2009 Observations Report by Margaret Slitzky, Educational Advocate and Consultant.

45. The Student stated fifteen (15) additional reasons in support of the Motion and outlined twenty (20) components of the requested interim program as well as Notice that the Parents would be implementing the outlined interim program beginning April 6, 2010.

46. On April 1, 2010, the BSEA issued an Order scheduling the hearing on the above-referenced Motion for April 13, 2010.

47. On April 2, 2010, Northampton filed its Opposition to Student's Motion for Interim Placement.

48. On or about April 15, 2010, Joseph was accepted by Perkins School.

49. On May 13, 2010, the Parent submitted twelve (12) additional exhibits for the Motion hearing.

50. On May 18, 2010, the Parents received twenty (20) additional exhibits from Northampton for the Motion Hearing.

51. A hearing on the Student's Motion was held on May 21 and July 9, 2010.

52. In a Ruling forwarded by the BSEA to the Parents on September 3, 2010, the BSEA Hearing Officer denied the Student's Motion.

53. In her Ruling, which came after the Interim Program had already been completed, the BSEA Hearing Officer found that the IEP developed and implemented by Northampton was not in any way inappropriate for Joseph.

54. The BSEA Hearing Officer's Ruling arbitrarily and capriciously ignored large portions of the administrative record.

55. The BSEA Hearing Officer's Summary of Evidence (Findings of Fact) in her Ruling was arbitrary and capricious and not supported by the evidentiary record.

56. Contrary to law, the BSEA Hearing Officer's Ruling repeatedly relied upon Northampton's Opposition to Student's Motion and arbitrarily and capriciously treated Northampton's arguments therein as evidence.

57. Contrary to law, the BSEA Hearing Officer excluded documents submitted by Northampton in July 2009 and included in the administrative record, but arbitrarily and capriciously incorporated other documents dated prior to July 2009 in her Ruling.

58. The BSEA Hearing Officer arbitrarily and capriciously relied upon outdated documents from March 2009 and arbitrarily and capriciously ignored the findings and recommendations of all evaluations from July 2009 through March 2010.

59. The BSEA Hearing Officer's Summary of Evidence arbitrarily and capriciously attributed findings to the ICCD July 2009 Neuropsychological Assessment which are no where located within the document and which are contradicted by the actual findings and recommendations therein.

60. The BSEA Hearing Officer arbitrarily and capriciously attributed testimony to Northampton's witness which is refuted by the administrative record.

61. The BSEA Hearing Officer's findings regarding implementation of the 2008-2009 and 2009-2010 IEP's were not supported by the evidence and were, in fact, refuted by Northampton's witness.

62. The BSEA Hearing Officer's findings regarding Joseph's level of inclusion in his third grade, the location of his third grade classroom, the creation of a separate space for Joseph in his third grade classroom, his access to the third grade classroom curriculum, and adaptations provided to Joseph in his third grade classroom were arbitrary and capricious and ignored the testimony of Northampton's sole witness.

63. The BSEA Hearing Officer's Ruling arbitrarily and capriciously ignored the comprehensive and uncontroverted findings and recommendations in the July 2009 and January 2010 reports of Dr. Castro and Kathy Rielly, the February 2010 assessment by Dr. Salomone, and the November 2009 report by Margaret Slitzky, all of which were endorsed by Northampton's witness.

64. The BSEA Hearing Officer's Ruling arbitrarily and capriciously cited facts and issues resolved by and between the parties in 2005 and 2006.

65. The BSEA Hearing Officer's findings that Joseph's educational program was consistent with the current recommendations of outside evaluators was arbitrary, capricious, and contrary to the recommendations therein.

66. The BSEA Hearing Officer's Ruling contained repeated findings and conclusions contrary to the actual, uncontroverted testimony of both the Parent and Northampton's witness.

67. The BSEA Hearing Officer's Ruling arbitrarily and capriciously ignored the July 2008 Hearing Request, May 2009 Amended Hearing Request, and was refuted by these and other documents in the administrative record.

68. The BSEA Hearing Officer's Ruling failed to consider a myriad of uncontroverted procedural violations committed by Northampton which, by law, denied Joseph FAPE, caused a deprivation of educational benefits, and denied the Parents meaningful participation in the Team process.

69. The BSEA Hearing Officer's Ruling failed to consider the fact that Northampton did not implement accepted portions of Joseph's IEP's as written, resulting in a denial of FAPE and his failure to make effective progress.

70. The BSEA Hearing Officer's Ruling arbitrarily and capriciously ignored the Parent's observations in her unrefuted testimony, to wit: her son had a severe deficit of expressive communication and was not afforded any way to express himself in Northampton's program; her son was becoming increasing distant from peers; her son was isolated in a classroom of one (1) for a large majority of his day; her son did not have

tools or methodologies in place to support him in the development of communication skills; and her son could not transition to Perkins School as planned without a working communication system.

71. The BSEA Hearing Offcier's Ruling arbitrarily and capriciously ignores the Parent's uncontroverted testimony that, in the period of just six (6) weeks of implementing the interim program, the following was accomplished:

- A communication low tech book was developed
- One consistent alphabet scan was incorporated on both his computer and augmentative communication device
- The alphabet layout on each was significantly more intuitive
- The 84 grid on his augmentative communication device (ECO) was reduced
- Topic pages were developed to facilitate managed conversation/success in group activities
- A Programmatic CVC phonics program was implemented
- Joseph was utilizing word prediction
- Joseph used the ECO with comfort in natural settings, in group settings, there was active team parent problem solving and collaboration
- A SETT framework was utilized to evaluate student progress
- The ECO was being utilized to support age appropriate literacy activities
- The ECO was now mounted and accessible
- Adapted leveled switch-accessible picture books were developed to support extended knowledge and independent learning.

72. None of these accomplishments occurred over a two (2) year period in Northampton.

73. The BSEA Hearing Officer's Ruling arbitrarily and capriciously ignored undisputed oral testimony and documentary evidence regarding ongoing data evidencing Joseph's progress in his interim program.

## Causes of Actions/Statement of Claims

### Count 1
### Individuals with Disabilities Education Act,
### 20 U.S.C. §1400 et.seq. and M.G.L. c. 71B

74. The Plaintiffs reallege and incorporate by reference herein the allegations contained in Paragraphs one (1) through seventy-three (73) of their Complaint.

75. The BSEA Hearing Officer's Ruling contains errors of law and fact, and is unsupported by a preponderance of evidence.

76. The BSEA Hearing Officer's Ruling is arbitrary, capricious, and otherwise not in accordance with the law.

77. The BSEA Hearing Officer's delay in issuing her Ruling was in violation of federal law and guidelines and created undue hardship for the Parents.

### Count 2
### Section 504 of the Rehabilitations Act,
### 29 U.S.C. §794

78. The Plaintiffs re-allege and incorporate by reference herein the allegations contained in paragraphs one (1) through seventy-three (73) of their Complaint.

79. The acts and omissions of Northampton in failing to provide an appropriate educational program to Joseph constitute discrimination against him on the basis of handicap in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

80. As a result of Northampton's discriminatory conduct, the Plaintiffs and Joseph suffered damages, including but not limited to emotional distress and loss of educational services.

Count 3
Americans with Disabilities Act
42 U.S.C. §§12101 et seq.

81. The Plaintiffs re-allege and incorporate by reference herein the allegations contained in paragraphs one (1) through sixty-seven (73) of their Complaint.

82. The acts and omissions of Northampton in failing to provide an appropriate educational program to Joseph constitute discrimination against him on the basis of handicap in violation of Americans with Disabilities Act 42 U.S.C. §§12101 et seq.

83. As a result of Northampton's discriminatory conduct, the Plaintiffs and Joseph suffered damages, including but not limited to emotional distress and loss of educational services.

Prayer for Relief

WHEREFORE, the Plaintiffs respectfully pray that the Court:

A. Assume jurisdiction over this action;

    B.    Receive the records of the administrative proceedings and hear additional evidence;

    C.    Declare that the BSEA Hearing Officer's Ruling was unsupported by a preponderance of the evidence, arbitrary, capricious, and contrary to law;

    D.    Reverse the BSEA Hearing Officer's Ruling and order reimbursement to the Parents for the costs associated with their interim home-based program;

    E.    Grant the Plaintiffs attorney's fees and costs pursuant to 20 U.S.C. §1415(e)(4);

    F.    Grant the Plaintiffs compensation for damages suffered; and

    G.    Grant such other relief as the Court deems just and equitable.

The Plaintiffs demand a jury trial in this matter.

Dated: December 2, 2010

Respectfully submitted,
JOSEPH DOE,
and his parents,
JOSEPH AND JANE DOE,
by their attorney,

/s/ Peter L. Smith
_____
Peter L. Smith, Esq.
200 North Main Street, Suite 8
East Longmeadow, MA 01028
(413) 525-1136
Fax (413) 525-4128
BBO# 542544